## PAULLING *vs.* WATSON.

1. The right to a perpetual injunction of a judgment at law founded on a gaming consideration, although the plaintiff therein is an innocent holder for valuable consideration, and no defence at law was attempted, is not affected by an erroneous decree of the chancellor dismissing the bill and dissolving the injunction; and if the collection of the money is afterwards coerced by execution, it may be recovered in an action for money had and received, if commenced within six years from the reversal of the decree on error and the award of a perpetual injunction.

APPEAL from the Circuit Court of Greene.
Tried before the Hon. TURNER REAVIS.

THIS was an action for money had and received, and was commenced (by summons and complaint) on the 4th March, 1853. The facts of the case, as set out in the bill of exceptions, were as follows:

"At the March term, 1838, of the Circuit Court of Marengo county, Watson recovered a judgment against Paulling for the sum of $1130 80, founded upon a note dated September 17, 1836, made by said Paulling to one Rowland Edson, and endorsed by said Edson to Watson for a valuable consideration. No defence at law was made or attempted by Paulling. Watson seeking to collect the amount of his judgment by execution, Paulling filed a bill in chancery, praying that he might be enjoined from its collection, and alleging that the note was given for a gaming consideration—money lost at cards with Edson—which fact it is not charged was known to Watson. For the facts and proceedings had in this chancery case, reference may be had in the Supreme Court to the record of it there, and to the published report in 21 Ala. 280. The chancellor granted an injunction, and the case remained enjoined until the December term, 1850, of the Chancery Court of Greene, when the chancellor, upon the hearing of the case, dismissed the bill, and dissolved the injunction. Watson thereupon sued out a new execution, and proceeded to collect his judgment. After the issuance of this execution, to-wit, on the 31st day of March, 1851, and before the payment of the money thereon, Paulling sued out a writ of error upon the decree of the chancellor, returnable to the then next term of the Supreme Court, where the case was regularly continued until the 29th July, 1852. Paulling gave a writ-of-error bond on suing out this writ of error, but the injunction was not re-instated, nor was a new injunction obtained; but Paulling applied for an injunction to a circuit-court judge, pending the period the case might remain in the Supreme Court, which was refused. The sheriff proceeded under the execution to collect the debt, interest, and costs from Paulling, and on the 20th May, 1851, paid over to Watson the sum of $2319 63, in full of debt and interest, and the sum of $26 43 court costs; and $63 20 was collected as commissions to the sheriff, but neither of these last two sums was paid to Watson. After the receipt of this amount by Watson, to-wit,

on the 29th day of July, 1852, the Supreme Court reversed the decree of the chancellor, and rendered a decree that said judgment be perpetually enjoined; and in a few weeks afterwards Paulling wrote to Watson, demanding the repayment of the money which had been collected from him by said execution; and Watson replied, that he would examine the opinion of the Supreme Court, and ascertain if he was liable, and if he concluded that he was, he would pay without suit. In reply to a letter from Paulling's attorney, dated February 2, 1853, he replied, that he would not pay. This suit was commenced at the first term to which a suit could be brought after notice that he would not pay; and the summons was issued on the 4th March, 1853.

"This was, in substance, all the testimony on both sides; and the court charged the jury, that upon this testimony the plaintiff was not entitled to recover; to which charge the plaintiff excepted."

No errors are assigned on the record.

J. R. JOHN, for the appellant:

When a judgment is reversed, the rights of the parties are immediately restored to the same condition in which they were before its rendition, and the judgment is said to be mere waste paper.—Dupuy v. Roebuck, 7 Ala. 484; Simmons, adm'r, v. Price, adm'r, 18 ib. 405; Price v. Simmons, adm'r, 21 ib. 337; Williams v. Simmons, 22 ib. 425.

If the above position be true, then the injunction which the chancellor dissolved, being restored by the judgment of reversal of this court, must be considered as continuing, as between the parties, all the time from its first service; consequently Watson collected the money wrongfully. Collecting the money by a nominal legal right, which has been swept away from him by the decree of reversal, he cannot retain it. Williams v. Simmons, 22 Ala. 425.

Watson shows no right to collect the money from Paulling, except the naked right given him by the judgment in the Circuit Court of Marengo, which has been taken from him by the decree of reversal of this court, and is as if it never existed. Coercing the money without right, he cannot be permitted to retain. He retains, if at all, by virtue of right

arising from, or out of, or connected with the reversed judgment. None of these things exist in this case. His security (the note) and judgment were void, and the decree of the chancellor vacated.

The foregoing positions are also fully sustained by analogy drawn from the law applicable to real estate. A party unlawfully dispossessed, so soon as he is restored to possession, is regarded as continuing in possession all the time, and consequently may maintain trespass for injuries to the premises, as though he had been in the actual possession all the time of his disseizin.—Morgan v. Varick, 8 Wend. 587, 591; Dewey v. Osborn, 4 Cow. 329, 338.

Watson stood on what he insists were his legal rights in collecting the money from Paulling, Paulling resisting; and if he collected without legal right, as he certainly did, if the judgment of reversal restored the parties to all the rights which existed between them at the time of the rendition of the reversed judgment, then Watson cannot retain, but must refund.—Williams v. Simmons, 22 Ala. 431; Sturgis v. Allis & Lee, 10 Wend. 354.

Watson asserts a right to the money collected of Paulling through and by virtue of a gaming security—a judgment founded on a note given to secure the payment of money lost at a game of cards. This security is utterly void. It can give him no right to collect, nor can it give him a right to retain. The fact that he has the money cannot give it validity sufficient to retain.—See Clay's Dig. 257, § 1; Finn & Dulaney v. Barclay, 15 Ala. 626.

Money paid on a gaming security may be recovered back, for the reason that the security is utterly void. This was money coerced by means of a gaming security, and not voluntarily paid, and therefore can be recovered back by this action.—1 Story's Eq. Pl. 324, § 304; Fon. Eq., b. 1, ch. 4, § 6, note c.

There is a well-defined distinction taken between illegal contracts executed and unexecuted. If an illegal contract (gaming for instance) be voluntarily and fully executed, in some cases an action will not be sustained for the recovery of the money back which has been actually paid. The courts leave the parties to the illegal contract where they voluntarily

place themselves. This is the extent to which the cases of Tindal v. Childress & May, 2 Stew. & P. 250; Windham, use &c. v. Childress & Skanes, 7 Ala. 357, and Samuels v. Ainsworth, 13 *ib.* 366. All these are cases of voluntary and full execution of the illegal contract by the actual payment of the money or thing won. They go no further, and it may be doubted on good authority whether they are correct.—Story's Eq. 323-4, §§ 303-4, and Foreman v. Hardwick, 10 Ala. 325.

But if the contract has not been thus fully and voluntarily executed, money may be recovered. Money may be recovered back from a stake-holder by a simple notice not to pay to the winner, as in the case of Woods v. Duncan, 9 P. 227. If a simple notice be sufficient, filing a bill, &c., certainly is sufficient to show that the party disaffirms the contract, and to authorize a recovery.—Foreman v. Hardwick, 10 Ala. 325. Paulling resisted all the time, and occupies a better ground than the parties in either of these last cases.

This is not a case of voluntary payment of money lost at play. It might therefore be admitted that money lost at gaming, if paid, could not at common law be recovered back; and further, that money lost at play and voluntarily paid, could not be recovered back under the statute of 1807 ; for this was a coercive payment by means of a gaming security, and therefore Story's position is correct on this point, and fully covers this case ; and he is fully sustained on this point by the note c in Fonb.—1 Story's Eq., § 304.

An injunction is granted and perpetuated because from the facts,—whether they arise out of a statute or otherwise,—it is against conscience and law that the party should proceed. 2 Story's Eq. 194, § 875 ; 3 Dan. Ch. P. 1810.

If the above position be true, how can a party who does proceed thus contrary to equity, conscience, and law, and by such proceeding and by no other right collect money, claim to hold it on the ground of equity and good conscience? But this is a still stronger case : here the injunction, being perpetuated by relation, operates from its service on Watson.

After the erroneous dismissal of the bill and dissolution of the injunction, Paulling had no certain and well-defined remedy by which to prevent the collection of the money ; and certainly he cannot suffer because of the improper action of

14

the court, nor can Watson acquire any right by that improper action. He is held to know that his judgment was void, and that the dissolution of the injunction was erroneous.—Carpenter v. Garrow, 4 Stew. & P. 336 ; Boren v. Chisholm, 3 Ala. 513 ; *Ex parte* Sanford, 5 *ib.* 562 ; Griffin v. Bank at Huntsville, 9 *ib.* 201. These cases show that Paulling could not arrest the execution. He made an effort and failed. Did he not do all he could do to prevent the final execution of the illegal contract ?

The decree of this court perpetuating the injunction operates, as between the parties to it, and upon their rights, in the same manner and to the same extent, as though it had been rendered on the day the chancellor dismissed the bill and dissolved the injunction. This court does just what the chancellor should have done, and the decree of this court operates on the rights of the parties just as if the chancellor had perpetuated the injunction, instead of dissolving it ; the injunction, in legal contemplation, operating by relation from its service as though it had never been dissolved.—Sturgis v. Allis & Lee, 10 Wend. 354 ; Duncan v. Kirkpatrick, 13 Serg. & R. 294 ; McJilton v. Love, 13 Ill. 494.

R. H. SMITH, *contra:*

The ground of the action is, that plaintiff, after the money was paid, and more than six months before suit brought, obtained an injunction against paying it; and the other facts are, that he was prosecuting a suit for an injunction when the money was collected by legal process lawfully pursued. The injunction was purely statutory : no jurisdiction was shown in the case, except that under the statute, and without regard to laches in suffering judgment. The power under the statute then was, simply to enjoin the judgment as it was when the decree of the Supreme Court was rendered. The power to recover back the money was another distinct statutory right, confined to the winner, and limited to six months from the payment. If it had been shown, in the progress of the cause, that the money had been lawfully collected, the court would have possessed no power to order it to be restored.—2 Bibb's Rep. 4. Can the indirect effect of an injunction be greater than could have been given directly by a decree?

But the money could not have been recovered of Watson, under the statute, within six months, he not being the winner. The statute so confines the right on its face ; all the authorities so limit it ; and the plaintiff admits this in his argument. As between Paulling and Watson, the latter stands on the higher ground of equity. For public policy (not out of favor to the criminal loser) the collection of the money might have been resisted in a particular manner ; but Paulling has, by the commission of a crime, induced an innocent man to part with his money for the paper, who has lawfully, and by reason of Paulling's laches, obtained a legal advantage, of which no court will deprive him in favor of Paulling. If the parties were *in pari delicto*, the legal advantage fairly gotten might be retained.—2 Burr. 1005; 3 *ib.* 1354; 6 Mass. 381; 6 Cowen 431; 3 Pick. 446; 6 Mass. 84; 11 *ib.* 368.

Watson has not only a better standing in court for this reason, but the plaintiff has also lost his position by neglect : he had no injunction, but could have got one ; he neglected to do so, and lost by his neglect. He had a day in court, and full means at command to pursue his advantage ; but he did not, and he now sues to redress his loss arising from his own neglect.—3 Ala. 513 ; *ib.* 458 ; 9 *ib.* 201 ; 4 S. & P. 336 ; 3 Dan. Ch. Pr. 1611, and authorities there cited ; 3 Paige 381; 7 Johns. 295.

The effect of the injunction simply was to restrain : it could not act on the past, and undo what had been lawfully done. Its effect is, to prevent an act from being done ; its field of operation is the future. Its object is preventive and protective : it seeks to prevent a premeditated wrong, rather than to redress an injury already done.—2 Bland 461; 3 *ib.* 63; 2 Story's Eq., §.862. In cases like the present, the injunction is expressly limited by the statute to enjoin judgments at law.— Clay's Dig., p. 350, § 28. At the time the perpetual injunction was decreed by the Supreme Court, there was nothing upon which it could operate : the money, the collection of which it restrained, was already in the possession of Watson, and the judgment was satisfied.

When a judgment has been recovered before a competent court, the party paying that judgment shall not recover back the money in another action while the judgment remains in

force.—1 Root's R. 120; 7 Greenl. 45; 17 Mass. 394; 3 Conn. 461; 1 Pick. 439; 3 Day's R. 36. The judgment upon which Paulling paid this money is still in force. The injunction having been dissolved, the plaintiff (Watson) was at liberty to pursue his judgment, and collect his money under execution. The appeal did not have the effect of re-instating the injunction.—3 Ala. 513; 9 *ib.* 201; 4 S. & P. 336; 7 Johns. 295.

RICE, J.—Under the act of 1807, (Clay's Dig. 257, § 1,) a note, or other security, given in consideration of money won at gaming, is void,—even in the hands of an innocent holder for a valuable consideration.—Manning v. Manning, 8 Ala. 138.

The act of 1812 (Clay's Dig. 350, § 28) provides, that the courts of equity shall have jurisdiction in all cases of gambling consideration, so far as to sustain a bill for discovery, or to enjoin judgments at law. Under this act, a court of equity is bound to entertain a bill, seeking to enjoin a judgment at law, which has been rendered on a security given for a gaming consideration, although the complainant in such bill could have defended himself at law, but did not do so. If such bill is filed in the proper county against the plaintiff in such judgment, before the collection of the money, the right of the complainant to a perpetual injunction of the judgment, when the facts alleged in the bill are admitted or proved, is a right given by statute, and is not dependent upon his giving any bond, nor upon the infallibility of any chancellor. The error of a chancellor in dismissing such bill cannot permanently despoil the complainant of his right to a perpetual injunction, nor of the substantial benefits lawfully resulting from such injunction. If the chancellor, by such erroneous decree, temporarily deprives the complainant of his money, by enabling the plaintiff in the judgment to coerce it from him by execution, the reversal of that decree by the Supreme Court, accompanied with the award of a perpetual injunction, restores to the complainant both the legal and equitable right to the money.—Finn v. Barclay, 15 Ala. 626; Knox v. Abercrombie, 11 *ib.* 997; Williams v. Simmons, 22 *ib.* 425.

A decree, duly obtained under the act of 1812, above cited, perpetually enjoining such judgment, is, as between the parties to it, a conclusive ascertainment that the judgment was

founded on a gaming security, and that the plaintiff therein not only had no right to issue his execution, but that his judgment (in the language of the act of 1812) is "utterly void and of no effect, to all intents and purposes whatsoever."—McCall v. McRae, 10 Ala. 313, and the cases cited above.

Money collected by execution under such judgment before it was perpetually enjoined, but after the plaintiff therein had been made a party to the bill filed to obtain such injunction, may be recovered back in an action for money had and received, commenced at any time within six years after the injunction was made perpetual.—Williams v. Simmons, 22 Ala. 425; Knox v. Abercrombie, 11 *ib.* 997.

Upon the facts stated in the bill of exceptions, the appellant is clearly entitled to recover, and the court below erred in charging that he was not thus entitled. For this error, the judgment is reversed, and the cause remanded.