Johnson, J.
This was an action brought against the treasurer of Lucas county (and the city of Toledo, afterward dismissed from the case on error), to recover back an .assessment which it is now admitted was illegal.
The petition alleges that the plaintiffs were the owners ■of a lot in Toledo, which was, on the 5th of May, 1868, .assessed to improve Maumee avenue, in said city, in the ■.sum of $461.33, which was duly certified under the statute to the county auditor, and by him placed on the duplicate for collection by the treasurer, as other taxes are collected.
•By reason that no resolution was passed aird published "by the city council, declaring the necessity for such improvement, the assessment was illegal and void. Before December 20, 1868, plaintiffs, who, it seems, had other taxes past due and coming due on that day, as well as one-half of this assessment, tendered to the treasurer his other taxes, which the defendant declined to receive, unless the .amount due on the assessment was also paid. This was de•clined by plaintiff'. The property was returned delinquent for both taxes and assessment, and the real estate adver *531 tised to be sold January 19,1859, at delinquent tax sale, to pay the same.
On the 13th of January, 1869, the plaintiffs, in order to release the land from custody and prevent its being sold at such sale, and to save the penalties incident to such sale, paid the taxes and said illegal assessment then due, under protest.
The answer, admitting the facts sot out in the petition, avers that,“on the 6th of November, 1868, an ordinance was passed to improve this street, and, on the 12th of thfe same month, a contract was made with one Lenox, for that purpose, who undertook and completed the work to the satisfaction of the city; that plaintiffs had actual notice of the passage of the ordinance, the making of the assessment, letting the contract, and performance of the work, or had the means of knowing all-said matters and things, and never gave any notice to said city that they, or either of them, intended to resist payment of said assessment, but permitted . . . the city to make said improvement, on the faith of said assessment, which improvement greatly benefited plaintiffs’ property; ” and that the assessment only covered the actual cost, whidh was the lowest price the work could be done for; and that if no irregularity had occurred, the amount assessed against plaintiffs would have been a just proportion.
The second count in the answer denies that the payment •of the assessment, as described in the petition, was involuntary, or made to relieve the property of the plaintiffs from the custody of the treasurer, or any other officer. To the first answer, a demurrer was interposed, which was sustained by the court. The case was then submitted upon the papers, and judgment was rendered for the plaintiff's against both defendants.
Since the case of Welker v. Potter, 18 Ohio St. 85, it is settled that the adoption of the resolution declaring the necessity of the improvement, and the publication of the same, are conditions precedent to authority to pass an ordinance for the improvement, or to assess adjoining prop *532 erty; and that it is not a mere irregularity, provided for iu the curative portions of the act, but makes the assessment void for want of authority to make it.
There remain but two questions to be considered :
I. Was the payment to the treasurer, January 13, 1869,. to prevent a sale, voluntary, or under such legal compulsion as entitles the plaintiffs to recover it back, under the-act of 1856 (2 S. & C. 1151) ?
II. Is the equitable defense set up in the answer a bar to the plaintiffs’ right of recovery ?
1. Was this a voluntary payment? It was made after a tender of all the legal taxes due, and after the officer had resorted to the summary remedy by advertising a sale, with the tax penalties and interest incident, and the officer was-about to sell, to prevent a sale and avoid the statutory penalty required to redeem.- It was about to be sold for the legal taxes, as well as the illegal assessments.
What amounts to a voluntary payment at common law has been and still is a vexed question in many cases.
To determine that question in this case requires an examination and construction of the law under which this action is brought. ' •
It is entitled, “ an act in addition to the several acts in relation to the courts of justice and their powers and duties.” ■ It provides “that the Courts of Common Pleas shall have jurisdiction to enjoin the illegal assessment of taxes, and the collection of taxes illegally assessed, and of actions to recover back the amount of such taxes as may have been or shall hereafter be collected, without regard to the amount, thereof.”
Section 2 provides that in actions to enjoin an illegal assessment it shall be against the county auditor, and any municipal corporation for whose use or benefit it is being made; in actions to enjoin the collection against the officer having to make the collection, and in actions to recover back money paid against the officer making the same, or, in case of his death, against his personal representative. The right of action under this statute is barred in one year.
*533 That this is a statute creating new statutory rights of action, not 1 heretofore existing, is, in the opinion of a majority of the court, quite clear.
It can not, as has been said, be treated as giving to the Court of Common Pleas jurisdiction of an action at law or In equity already existing; or that to have his remedy the party must make a case good at law or in equity by prior principles, which that court, by existing law, had no jux’is•■diction to hear and detexrmine. '
By the act of April 29, 1854 (1 S. & C. 386), relating to the organization and jurisdiction of courts, it is provided that “the Courts of Common Pleas shall have original jurisdiction, in all civil cases, where the sum or matter in dispute exceeds the jurisdiction of justices of the peace.”
Hex’e is complete jurisdiction, either in equity or at law, of all rights of action which existed before the act of 1856 was passed. This act is entitled, “ an act in addition to the .several acts in relation to the courts of justice and their powers and duties.”
It clothes the court with new powers, not conferred by existing law; it gives new rights to the tax-payer and new powers to the eoux’t, where the assessment or collection is of an illegal tax.
It prescribes a shox’ter limitation than is applicable to other actions.
To determine the scope and proper coxxstruetion of this statute a reference to the then state of the law, as to the remedy in such cases, is neeessax'y.
"What, then, was the state of the law, the evil, and the remedy ?
Prior to Mechanics and Traders’ Bank v. Debolt, 1 Ohio St. 591, it had been supposed to be the law that chancery would intexwene and enjoin the collection of an illegal tax. Burnet v. Corporation of Cincinnati, 3 Ohio, 73; Culbertson v. Cincinnati, 18 Ohio, 318; Baker v. Black, 6 Ohio, 53.
Ixx the Debolt case, however, it was held that if the tax was void, the treasxxrer can not be enjoined; that chancery *534 will not interfere to enjoin a mere trespass, when adequate compensation can be had at law.
This was followed in Exchange Bank v. Hines, 3 Ohio St. 1, where it was said : “A court of equity has no jurisdiction to restrain the collection of the tax by injunction,, even though the treasurer be insolvent.”
In Matheny v. Golden, Treasurer of Athens Co., 5 Ohio St. 361, this doctrine was reaffirmed; but where many parties were interested in the same tax, equity would intervene to prevent a multiplicity of suits.
By these decisions, there remained practically no power-in chancery to afford relief to individual tax-payers in cases of illegal taxes.
At the same time, relief at law was greatly abridged and rendered inadequate by a series of decisions made concurrently with those inequity j ust referred to.
In Loomis v. Spencer, 1 Ohio St. 153, it was decided that if the law under which the tax was levied be unconstitutional, or the treasurer seizes the property without color of law, he is liable as a trespasser, as in case where a sheriff' acts on a void writ; but if the illegality of the tax arises-by reason of some error or omission of those charged with the assessment of it, and the duplicate is regular on its face, it affords ample protection to him, and no action will lie against him ; but in such case the remedy is against the-person or board that makes the assessment.
This doctrine was reaffirmed in Thompson v. Kelley, 2 Ohio St. 647, which was assumpsit to recover back an illegal tax where the act was valid, but the proceedings in making the assessment were irregular.
These decisions exhibit the state of the law of Ohio at the time of the passage of the act of 1856.
They show : 1. That an individual tax-payer had no relief in equity to restrain the assessment or collection of an illegal tax; he must seek his relief by an action at law.
2. If the tax was illegal by r-eason of a want of power under a valid law to levy it, its collection was a mere tres *535 pass, for which, the treasurer was liable. This was the only remedy, even though the treasurer was insolvent.
3. If the power existed to levy the tax, but the same -was illegal by reason of some act or omission of the assessing' officer or board, and the duplicate was regular on its face, then the treasurer was not liable. In such case the remedy must be against the officer or board committing the error.
To apply these rules to the case at bar (supposing the act of 1856 had not been passed), the only remedy this plaint-' iff would have would have been against the individuals composing the council of the city of Toledo.
He could not have sued the treasurer, because the law was valid, and the tax .was illegal, by reason of the acts.' and omissions of the eouncilmen in not passing and publishing the resolution.
He could not have enjoined the collection of the tax. He could not have sued the city of Toledo, for it will ‘hardly be claimed that a municipal corporation could be beld responsible for the errors of judgment or mistakes of its legislators acting in that capacity. Dillon on Oorp., secs. 758-766.
If the persons making this illegal assessment be sued, it would be said they are only responsible for want of integrity or fidelity, and not for mere error in assessing the tax. Durant v. Eaton, 98 Mass. 469; Dickman v. Billings, 4 Gray, 42; 2 Hilliard on Torts, chap. 32.
To sum up the whole matter and apply it to a case like the present, there was practically no remedy either at law or in equity.
"Whatever his rights may have been, prior to these decisions, as determined by the principles of the ancient common law, or in equity as understood by the great lights in equity jurisprudence, there remained but little of means of relief in such cases.
The tax-payer, stripped of any valuable or practical remedy for the injuries inflicted under color of law, and by authority of the state, was almost powerless.
To provide a proper remedy was the object of this law, *536 It was a legislative recognition of a fundamental duty enjoined by the constitution of the state, that while the power to tax was essential to government, the duty of protecting the citizen from illegal exactions under the name of taxes, and under the forms of law, was not to be forgotten or neglected.
It being, therefore, remedial in its character, it should receive that construction, if the words will reasonably admit, that will effect the manifest intention of the legislature, and remedy the evil.
It gives a remedy by injunction, on the application of a •single person taxed, when none existed before. In his application he need not aver and show, as under ordinary rules in equity, that great or irreparable injury is about to be done for which he has no adequate remedy at law, but only that the tax is illegal which is about to be assessed or collected. Steese v Oviatt, 24 Ohio St. 253.
It thus becomes apparent that a new equitable remedy was given by this statute.
And the same is necessarily true of the action to recover back. Prior to the act there was no action against the treasurer, unless the law was invalid, or he acted without color of law. Now he is liable, if the tax is void from any cause whatever.
Formerly, if the law was constitutional and gave the power, and the assessing person or board, by their acts or omission, l’endered the tax void, as in this ease, no action would lie against the treasurer. Now it will.
In an action to recover back, two things must be shown : 1. That the tax is illegal; 2. That it has been collected by those authorized by law to make the collection of such taxes. It being admitted that the tax is a nullity, it only remains to inquire if it has béen collected under process of law.
We conclude, therefore, that this was a statute creating new remedies both at law and equity.
The right rests upon the statute; the forms of proceeding *537 and all matters going to the disability of the party to assert the right, depends on general principles.
If he goes into a court of equity he is subject to the maxims of equity, and is to be governed by equitable principles ; not to determine what his right is, for that is defined by the statute, but to determine, first, if he has a statutory right of action, and if so then, second, if by any act -of his, or for which he is liable, he has lost his remedy. 24 Ohio St. 253.
And so, if he goes into the law side of -the court. As this is not the common-law remedy, existing without the statute, we can not look to the common law to determine when the right of action exists, for that is created and defined by the statute.
When, however, the right as determined by the statute is found to exist, the question whether there is any disability of the plaintiff or other defense that bars a recovery, depends on the application of legal principles.
At common law, as between individuals, a payment voluntarily made could not be recovered back. If made under duress of person or goods, the action would lie.
In the common-law action, payment under duress was essential to the existence of the right of recovery back. Without such duress no right ever accrued. Under the statute, it is the collection of the illegal tax by authority of law that gives the right, without regard to whether goods, person, or lands were resorted to or endangered thereby. A collection by any summary process whatever provided by law gives the right to collect back.
It is claimed, as the proceedings in this case were against the lands of plaintiff, and not against the person or goods and chattels, payment was at common law a voluntary payment, and could not be recovered back.
Conceding for the present that such is the common-law rule, and apply it to this statute, this anomalous state of things would exist.
If the treasurer distrained goods, and to save them from sale the person taxed paid the illegal tax, he had a right to *538 recover back; but in a case of threatened sale of land he-must let the land sell in order to entitle him to his right of action. He would thus be compelled to take all the hazards of losing his land before he could get relief. If it be said there is no hazard in the sale of the land under the illegal tax, as no title passes to the purchaser, we answer, the saméis true in a sale of goods. No title would pass to the goods any more than to the'lands. To construe this statute so-as to deny the right where land was seized, and give it where goods were liable, would to that extent defeat the express words of the statute which gives the right in all-cases of the collection of an illegal tax, or drive the party to the hazard of allowing his lands to be sold, and then defending against the purchaser.
Upon this subject of the hazard to title under a tax sale, the Supreme Court, in Burnet v. Cincinnati, 3 Ohio, 87, say speaking of the power of the courts of chancery to prevent such sale: “ When an assessment is made, and its legality is disputed, the uncertainty attendant upon the final result puts the estate in imminent jeopardy. If no title passes by a sale, the party has a remedy at law, but if title does pass he is remediless. A mode, thei’efore, of deciding this question, before any right is affected, is safest for all parties.” As the Debolt case overruled the doctrine of this case, it was obviously the intention of the legislature in the-act of 1856, to provide “ a mode of deciding this question,’’’ without subjecting the land to this “ imminent jeopardy.”
Passing by the question of what is a compulsory payment between individuals who meet on a common level, and where each is armed with the right to defend himself and his property by force, if necessary, against an aggressor, we-come to that where an officer of the law, armed with its-process and backed by all the power of the government, whose agent he is, makes a demand on the citizen.
As against the private aggressor, he may stand on his-rights, and defend his possessions against unlawful seizures, but when confronted with an officer of the law, with process regular on its face, it is the duty of the citizen to yield *539 a peaceable obedience, trusting to the remedy the statute-gives him for his relief.
So if a party can have his day in court before payment,, and does not avail himself of it, he can not be allowed, after permitting that opportunity to pass by, to maintain an action to recover back.
In such cases, the maxim, “ Interest rei publicce ut sit finis litium,” governs. Mariott v. Hampton, 7 Tenn. 269; Brown v. McKinnally, 1 Esp. 279; Hamlet v. Richardson, 9 Bing. 644; Dew v. Parsons, 2 Barn. & Ald. 562; 2 Smith’s Lead. Cas. marginal p. 402; Covington Bridge Co. v. Sargent, ante, 233.
In 2 Smith’s Lead. Cas. 404, it is said : “ Indeed the distinction is plain to common sense between the case of money paid upon a claim made by a public officer, who., is-judge in his own case, and has the power of withholding, by his own mere motion, the ordinary rights of the subject, from the adverse party, till his demand is complied with; and money paid under a claim made by a private individual, who has no power of enforcing it. ’ In the former case it is obviously contra cequum et bonum-, that the public officer should retain what he has thus acquired by taking an undue advantage of his situation.”
In Steele v. Williams, 8 Exch. 624, it was held, that money-paid under an illegal demand, colore officii can never be voluntary.
It was a ease of a public officer demanding greater fees-than allowed by act of parliament, which were paid without protest. Martin, B, said : “As to whether the payment was voluntary, that, in truth, has nothing to do with the case. ... To call it a voluntary payment is an abuse of language.”
In Boston v. The City of Boston, 4 Met. 181, after laying down the general rule, as to voluntary payments, the court say: “ The reason of the rule is obvious, when applied to a case of payment upon a mere demand of money, unaccompanied with any power or authority to enforce such demand, except by suit at law. In such case, if a party would resist an unjust *540 •demand, he must do so at the threshold. The parties treat with each other on equal terms.”
If an illegal tax is voluntarily paid, without any attempt to deny its validity or to notify the collecting officer, that he must proceed at his own risk, it can not be recovered back. Taylor v. Board of Health, 31 Penn. St. 73.
In an action to recover back a sum of money paid under •a demand of a revenue officer for a license as a manufacturer, the coui’t said : “ The taxes were demanded by an officer having authority to collect them by distraint. This was a sufficient duress of the plaintiff’s property to make the payment involuntary.” Hendy v. Soule, Deady, 400.
Where a sheriff had sold real estate under a satisfied order •of sale, and was about to make a deed, and “payment was made to prevent it, it is said : “ While I do not admit the -doctrine that duress of real property is never a sufficient compulsion, . . . yet a mere cloud on the title, or threat to create one, has never been held to produce compulsion. It is not a controlling necessity which compels the owner to pay the illegal demand. ... To make it a case of payment under compulsion, there must be an illegal demand, coupled with a present power or authority, in the person making such demand, to sell or dispose of the property if payment is not made as demanded.” Mariposa Co. v. Bowman, Deady, 228.
The Supreme Court of the United States, in Erskin v. Van Arsdale, 15 Wall. 76, which was an action to recover back an illegal revenue tax by a collector, states the rule to be, “ Taxes illegally assessed and paid may always be recovered back, if the collector understands from the payer that the taxes are regarded as illegal, and that suit will be instituted to compel the refunding of them.”
It is said the object of a notice of such suit, or of payment under protest, is that the officer may protect himself.
If, on inquiry, he finds the demand illegal, he may decline to proceed, or if he collects, he may withhold the money from payment over until the question is settled. Meek v. McClure, 49 Cal. 628.
*541 Harvey & Boyd v. Town of Olney, 42 Ill. 336, was assumpsit to recover back a sum paid under an ordinance of the-town, which required recruiting agents to pay a license before prosecuting their business. No process was issued against plaintiffs, but they called and paid the sum demanded to avoid the penalty of the ordinance, which was fine and imprisonment, stating they would sue to recover it back. “ This -was held an involuntary payment, the ordinance being illegal. If the money was paid under threats of the officers, or under a belief, induced by them, that only by payment they could escape prosecution, and under protest, then such payment can in no just sense be called voluntary.”
If a judgment against lands, for the non-payment of an assessment, is paid without precept or execution, by which its-collection could be enforced, such payment is voluntary, and can not be recovered back (Elsten v. Chicago, 40 Ills. 514); but if the collector has a warrant, by which he may levy and sell, it is not voluntary. Bradford v. Chicago, 25 Ills. 411. This was a case of a void assessment.
In Amesbury W. & C. M. Co. v. Inhabitants of Amesbury, 17 Mass. 462, it is said: “ The voluntary payment of a part of the taxes in the case does not affect the right of the-plaintiff' to recover the amount of money paid upon an illegal assessment.”
Where the statute provided a proceeding by which the-tax-payer could, upon application, procure from the municipal authorities an abatement of illegal taxes, an action of assumpsit will not lie for that reason. Hemingway v. Inhabitants of Machis, 33 Me. 445.
So, the mere prospect of judicial proceedings, to enforce an illegal demand, will not make a payment compulsory.
The rule, as laid down in Benson v. Monroe, 7 Cush. 125, is often cited, against the right to recover back money paid to an officer. In that case there had been a suit to recover the amount to which no defense had been actively made. The court say, “ He had an opportunity, in the first instance, to contest the claim at law — he has had a day in court. He *542 may plead, and make proof that the claim on Mm is one he is not bound to pay.” This ease, so often referred to, ■on this question of compulsory payment, really turns on the ground that the party “ had a day in court.”
The authorities are numerous, and, in the main, uniform to the effect that what constitutes a compulsory payment to ran officer armed with process of law, and clothed with power to enforce its commands, and where the party has had no day in court, is quite a different question from what it is, as between individuals, or where he has had an •opportunity to be heard in a judicial proceeding. Pauling v. Watson, 26 Ala. 205; Stevens v. Fitch, 11 Met. 248; Town Council of Cahaba v. Burnett, 84 Ala. 407; Smith v. Inhabitants of Readford, 27 Me. 145; Christy v. City of St. Louis, 20 Mo. 143; N. Y. & Harlem R. R. v. Marsh, 2 Kernan, 308; Town of Barkendstead v. Case, 5 Conn. 528; Amesbery v. Amesbery, 17 Mass. 461.
Shaw, C. J., in Preston v. Boston, 12 Pick. 14, which was .assumpsit to recover back an illegal tax, says, “The warrant to a collector . . . is in the nature of an execution, running against the person or property of the party, •on which he has no day in court, no opportunity to pleacl and offer proof and have a judicial decision of the question of his liability. When, therefore, a party, not liable to taxation, is called on peremptorily to pay such a warrant, he may give notice that he so pays it by duress and no't voluntarily.”
When an officer, armed with a warrant for seizure of person or property, demands a sum of money, or otherwise it will be enforced, any payment is involuntary which is made under such demand, though made before levy. He may assume that on non-compliance with the demand the officer will proceed to do his duty and execute the process. Nichodemus v. East Saginaw, 25 Mich. 456; Atwell v. Zeluff, 26 Mich. 118.
It will be seen from these authorities that payments under process of law (a'nd statutory authority to collect ■■••taxes by distraint and sale of real or personal property is *543 process of law) are not voluntary, if made upon a demand by an officer having the power and charged with the duty •of enforcing the process.
That this rule is not limited to ■ cases to save goods and ■chattels from illegal sale is well settled.
In Mays v. Cincinnati, 1 Ohio St. 262, it is said, to make .a payment to an officer compulsory it must be made to release “the person or property,” not “person or goods,” as the -common-law rule runs. In Thompson v. Kelley, 2 Ohio St. 647, Rauney, J., says: “ The treasurer had apparent authority to seize, without suit or action, on the plaintiff’s property, and under such circumstances he might well pay the money under protest.” This was a case of payment to the county treasurer.
Wakefield v. Newborn, 6 Q. B. 276, was money paid under protest by a mortgagor to obtain title deeds, withheld on an unfounded claim of lien. It was held the money could be recovered back.
To the same effect was Smith v. Sleab, 12 M. & W. 585.
So where the attorney of a mortgagee, with power of sale, refused to stop the. sale or deliver the title deeds, unless paid an exorbitant demand, it was held that the excess having been paid under protest, might be recovered back. Close v. Phillips, 7 Man. & Granger, 586.
Elston v. Chicago, 40 Ill. 514, was a judgment on an assessment against lands, paid uuder protest to save the land' from sale. So was Bradford v. Chicago and The Mariposa Co. v. Bowman, before cited.
The City of Marietta v. Slocomb, 6 Ohio St. 471, was an action to recover back an assessment claimed to be illegal, paid under protest. Scott, J., says : “ The payment in this case does not appear to have been made under duress of person or property, nor to prevent the seizure of either. As no summary process was allowed by law for its collection, the only mode authorized being by “ a proceeding at law or equity,” he had a choice either to pay the claim which the city preferred against him or contest its validity.” In this ease it was assumed that if Slocomb had not chosen to *544 pay, rather than defend in a judicial proceeding, which would have been required to collect, the money could have' been recovered back, though it was an assessment on land.
Modern authorities do not therefore sustain counsel in limiting the rule as to compulsory payment to public officers clothed with power to enforce the demand, to cases where “ person or goods ” alone are in jeopardy.
The cases cited abundantly support the broader statement of the rule, as laid down in Mays v. Cincinnati, that where' money is paid under protest to an officer on summary process, without a day in court, to prevent a sale of property,, real or personal, it may be recovered back.
Perhaps the true reason why the rule at common law did not extend to lands' as well as goods, was the fact that at common law lands could not be sold on execution to satisfy any money demand. The capias ad satisfaciendum was a command to take the body, the fieri facias to take the goods and chattels, the levari facias reached goods and the profits-of the land. The land itself could not be sold.
Blackstone says this was the natural consequence of feudal principles. In this fact we perhaps see the reason why the common-law rule we are considering extended • tly “ to person or goods.” 2 Blackstone, tit. Execution.
II. Bo the facts set up in the answer constitute a good equitable bar to a recovery ?
The answer states that the plaintiff knew, or had the-means of knowing, the steps taken in making the improvement, and did not protest or give notice that they objected,, but permitted the city to go on, on the faith of the assessment.
It also states that plaintiff's property was greatly benefited ; that the assessment only covers the actual cost, and the amount collected was no more than was properly chargeable against them.
The answer does not aver actual knowledge, but only that they had the means of knowing. Neither does it make a. case coming under the maxim ex aequo et bono, as it does not *545 aver the benefits conferred are equal or exceed the amount exacted by the assessment.
This case is materially different from that of Kellog v. Ely, 15 Ohio St. 67, not only in the fact that that was inequity, whilst this is at law, but in the material facts which underlie the rights of the parties. In that the improvements were made on Ely’s land, with his knowledge and without objection, he had a day in court, he could, on final order of Probate Court, have prosecuted error or taken an apaeal, where the court says, .all errors and defects might have been corrected, and he had waited until the woi’k was completed which had improved his lands. On these grounds an injunction was refused. In this case it is not. clear that plaintiffs knew that these improvements were-being made ; that they knew “ or had the means of knowing these matters.”
The improvement was not on his lands, where the advantages and benefits are directly beneficial.
It was an improvement for the benefit of the public, and not of individuals. The incidental benefits, if any, may or may not equal the assessment. It is not claimed there was-any contract, express or implied, to pay. It can hardly be-claimed that the doctrine of estoppel applies to such a case, and upon such a state of facts, when the demand was ■wholly void.
It would be a dangerous doctrine to hold that a municipal corporation could, without authority of law, assess the adjacent property for an improvement of no value to the-lot-owner, though of great public benefit, and compel the-lot-owner to pay. It is quite enough that the lot-owners be required to pay vdien there is authority of law.
Kellog v. Ely was decided on the authority of Wiggin v. Mayor of New York, 9 Paige, 24.
In that case, one of the grounds for refusing the injunction was that the complainant had “ received the full benefit of the improvement.” In this case, it is said the property is “ greatly benefited.”
*546 This case assimilates itself more to that of Wright v. Thomas, 26 Ohio St. 346. That was an action to enjoin the collection of an assessment, under an invalid law, to pay for the construction of a levee, not on or through plaintiff’s lands, but some eighty rods distant, but which the assessing authority adjudged was benefited.
The plaintiff had notice of the commencement and progress of the work, and took no steps until after it was completed. The court say : “ In the absence of any proof that the plaintiff, actually or impliedly, requested the work to be done, or promised to pay for it, we think the court was right in enjoining the illegal tax.”
Under the provisions of the municipal code (secs. 546 :and 547), the city of Toledo might have proceeded, by an .action at law, to recover these assessments.
In such proceedings, under section 550, the court would, in cases of irregularity or defect, render judgment notwithstanding such defect, for the amount properly chargeable .against the defendant.
In such a case, the defendant would have had his day in court. This is a summary process resorted to to collect this .assessment.
It is void, and not an irregular tax.
In Wright v. City of Boston, 9 Cush. 233, it is laid down ,as the settled law of Massachusetts that “ the only ground upon which a party is allowed to pay a tax or assessment under protest, and afterward maintain an action to recover it back, is when the tax is wholly void — a mere nullity; when he can have no action or take no appeal, and when •the collector appears with his warrant, he must pay, or ¡have his person arrested or property taken — then he pays under a species of duress.”
The case of The Board of Supervisors of Stephenson County v. Pello Manny, cited by counsel from 4 Chicago Legal News, No. 4, was not a void, but irregiilarly assessed, .tax.
Curtis v. The Board of Supervisors, 22 Wis. 167, was an *547 action to recover back money paid for void certificates of tax sales of lands, and not for void taxes paid. The plaintiff owned the lots actually taxed, but the certificates, by mistake, described other lots.
The court say : “A mere mistake in the description does not affect the equitable right of the county to retain the money in its possession. It is the same as if no such mistake had intervened.” The taxes were legally chargeable ■on the land, and the plaintiff had only paid what was legally chargeable, but, by mistake, the certificates were void, by reason of misdescribing the lots. Hence he was equitably liable for the amount paid.
Welker v. Potter, 18 Ohio St. 85, is, on this point, analogous. The assessment was void for the same reason as here. The action was by the contractor to recover them. 'The reply to the answer of lot-owners presented the question now under discussion, and it was claimed that the principles of Kellog v. Ely applied. It was also claimed that the curative provisions of the statute (which were similar to section 550 of the municipal code), in eases where the assessment was not chargeable, “ by reason of irregularity or defect in the proceedings,” applied in the case. The court say “ that the adoption of the resolution was a ■condition precedent, and the assessment was without authority of law, and not such a mere irregularity or defect in the exercise of lawful authority as are contemplated in "the curative proviso of the act.”
For these reasons, we do not think the matters set up in ihe answer constitute a bar to plaintiff’s right of recovery.

Judgment affirmed.

Day, Wright, and Ashburn, JJ., concurred.
Scott, Chief Judge, dissented.