## Conrad Atwell v. David H. Zeluff.

*Voluntary payment: Legal process.* A payment made on the demand of an officer under legal process, is not voluntary, although made before any levy; a party is not bound to await an arrest or seizure, but may assume that the officer will execute the process on which he makes demand. *First National Bank v. Watkins, 21 Mich., 483*, followed.*

*Payment on legal process: Protest: Interest: Demand.* No protest is necessary in such case to authorize an action to recover back the money illegally demanded; but where payment is made without protest, no interest can be claimed until after demand, or suit.

*Supervisor: Tax warrant.* A supervisor excuting a tax warrant is held to a knowledge of any illegality manifest on the face of the warrant, and is responsible for his acts under it.

*Assessment: Drain law: Parcels of land: Description.* An assessment under the drain law of 1869, requires a definite and clear description of each parcel to be charged as benefited, whereby it can be well identified. An assessment against a tract of forty or eighty acres, which declares that *ten* acres of each are benefited, without describing such ten acres, is void, as no land can be charged or sold which is not benefited, and such a description fails to show the particular land affected.

*Heard October 15 and 16.       Decided November 7.*

Error to Lenawee Circuit.

*A. L. Millard*, for plaintiff in error.

*E. B. Wood* and *C. A. Stacy*, for defendant in error.

CAMPBELL, J.

Atwell sued Zeluff, who was supervisor of the town of Ridgeway, Lenawee county, in an action of trespass, the cause of action being the issue by Zeluff of tax rolls for the collection of ditch taxes against Atwell, one of which he paid on demand of the collector, and the other was enforced by selling his personal property. The warrant issued to the collector, was the one required by law for the regular annual taxes, to be enforced, in case of non-payment, by sale of chattels. The ditch tax was extended on the general tax roll.

---

* See, also, *Nickodemus v. East Saginaw, 25 Mich., 456.*

In regard to the payment made without levy on his goods, it was objected that the payment being without protest, was voluntary. This question was somewhat discussed, but not actually decided, in the case of *First National Bank of Sturgis v. Watkins, 21 Mich. R., 483.* Where an officer demands a sum of money under a warrant directing him to enforce it, the party of whom he demands it, may fairly assume that if he seeks to act under the process at all, he will make it effectual. The demand itself is equivalent to a service of the writ on the person. Any payment is to be regarded as involuntary, which is made under a claim involving the use of force as an alternative, as the party of whom it is demanded cannot be compelled or expected to await actual force, and cannot be held to expect that an officer will desist after once making demand. The exhibition of a warrant directing forcible proceedings, and the receipt of money thereon, will be in such case equivalent to actual compulsion.

There has been some confusion among the authorities as to the necessity or effect of a protest in such cases, but the question has not often arisen upon the service of legal process. In some cases it has been intimated that it might be necessary, in order to recover back a payment from the person to whom it was actually paid, after he had paid over the money under his agency. But where the person demanding and receiving the money, does so under color of process, as a legal officer, we think the payment must be deemed involuntary, because the party paying has no legal means, by appeal or otherwise, of preventing the seizure of his property. If he has such means of redress, which would be effectual to stay the process, there is reason for making a distinction which may, perhaps, be sustained. The supreme court of Massachusetts, in *Boston & Sandwich Glass Co. v. City of Boston, 4 Met., 181,* citing a former

case in *17 Mass., 461,* refer to the absolute character of the warrant as excusing the necessity of a protest.    But we think the rule of damages there adopted as to the difference of liability where there is and where there is not a protest, is also based on good sense.    Where the money is not paid under protest, it is there held that no interest should be allowed until demand or action brought, so as to put the party sued in actual fault for not making satisfaction as soon as the wrong is pressed upon his notice. A payment without protest may prevent him from making inquiry and examining into the law, and while legal ignorance will not excuse an illegal demand, it may very properly qualify the extent of damages for a merely technical wrong.

The first question upon the validity of the warrants arises concerning what supposed defects of authority appear on their face.    For any such defects the supervisor who issued them is responsible, so far as they involve any liability. He is bound to know the contents of his own warrants. What facts behind the warrant, he is held to know, must be determined by other principles.

By *section eleven* of the drain law (*Sess. L. 1869, Vol. 1, p. 78*), the supervisor, when directed by the board of supervisors, is to levy the drain taxes "upon the several parcels of land described in said report of his township (*i. e.* the drain commissioner's report), according to the apportionment of said commissioner, and direct the township treasurer to collect and pay said sums to the county treasurer, in like manner, and at the same time, with other taxes: *Provided,* Said report and apportionment shall contain a description and assessment of all lands through which such drain or drains may run, or which in his opinion are actually benefited thereby."

*Section eight* directs how the charges are to be appor-

tioned.   Among other things the commissioner's report is to set forth "the number of acres of every section, or part of section, of lands to be benefited by such ditches or drains."   An assignment of a certain equitable part of the work is to be made, "to each parcel of land to be so benefited."   If not constructed, then the amount is to be collected against the land.   " The incidental expenses, damages and expense of construction of drains shall be assessed on the several parcels of lands benefited or injured, in proportion to the benefit or injury to accrue to each such parcel of land from such drains: *Provided*, That no assessment shall be levied on the lands not actually benefited."

This section evidently contemplates that every parcel of land benefited shall be described by itself as a section, or some subdivision of a section, or some other defined parcel, and that the number of acres contained in such defined parcel, shall be also set forth, in this respect corresponding with the ordinary practice in regular taxation.   The assessment is made a lien on the land, and in case of non-payment, it may be sold.   A certain and definite description is essential in order to identify it.

The lands described in the present case, are set out in the usual way for annual taxes, as two government subdivisions, one of forty acres, and one of eighty.   In a separate column headed " Acres benefited," an amount of ten acres is set down opposite each description.   It is claimed, and is very possible, that the drain commissioner understood this law as requiring him to estimate the benefits to each parcel of land, by assuming them to represent a certain number of acres, or a certain proportion of the whole tract.   But there is nothing in the roll to indicate that any more than ten acres in extent of each tract was benefited, and those parcels of ten acres are not defined in position or by description.   It may be open to ques-

26 MICH.—16.

tion, whether it was contemplated that regular lots or known parcels should be subdivided for any such purpose, and whether they should not be considered as the "par-cels" benefited by reason of their entirety. But as no such subdivision has been made here, that question does not arise. It is certainly possible that there may be separate freeholds much less than ten acres. As none but the parcels benefited can be sold or charged, and as these rolls set forth distinctly that only an undefined ten acres in each tract is benefited, the description is void for uncertainty, and the tax is therefore void.

As this defect is fatal, and there can be no justification under the roll, no other questions need be discussed. There was no demand here before suit brought, and the sale is not shown to have been any fixed time before. Judgment must be reversed, and a new judgment must be entered for plaintiff, on the finding, for the amount of the illegal exactions, with interest from suit brought, and with costs of all the courts.

There are such practical hardships in permitting persons to be held liable to action, where no distinct protest is made, pointing out reasons why a collector should withhold action under his warrant, that it is a proper subject for legislative consideration, whether some provision should not be made to regulate the matter. The officers can seldom be expected to understand the niceties of the law, and it is not desirable that persons should be deterred from holding the necessary local offices, by fear of consequences for which they are not morally responsible.

The other Justices concurred.