## ABIJAH WESTON v. THE COUNTY OF LUCE.

*Taxes—Payment under protest—Action against county—Duress—Pleading—Bill of particulars—Demurrer.*

1. Section 58 of the tax law of 1893, which authorizes the county treasurer, after the return of lands for unpaid taxes, to receive, under like provisions as in section 53 of the act, the amounts of the several taxes or any of them due, does not authorize the payment of taxes to the county treasurer under protest, and the bringing of a suit against the county to recover back the moneys so paid.[1]

2. The payment by a land-owner to the county treasurer, under protest, of illegal taxes assessed against his land, in order to secure from that officer the certificate required by the tax law of 1893 as to the payment of taxes to entitle his deed, given to a prospective purchaser, to record, does not constitute payment under duress, so as to give to the land-owner a common-law right of action against the county for the recovery of the moneys so paid, although he would otherwise have been prevented from making such sale.

3. A bill of particulars is no part of the declaration, and cannot affect its sufficiency upon demurrer.

4. A demurrer to an entire declaration, which, in addition to the special counts, contains the money counts, which are good, cannot be sustained.

Error to Luce. (Steere, J.) Argued October 3, 1894. Decided December 7, 1894.

*Assumpsit.* Plaintiff brings error. Reversed, and record remanded for further proceedings. The facts are stated in the opinion.

*C. W. Dunton* and *McMahon & Oren,* for appellant.

---

[1] For cases bearing upon the question of the recovery of taxes paid under the pressure of an actual or threatened levy, or under statutory protest, see *Canfield Salt & Lumber Co. v. Township of Manistee,* 100 Mich. 466, 473, and note.

*S. N. Dutcher*, for defendant.

HOOKER, J. Defendant demurred to the declaration filed in this case, which is based upon the claim for money paid to the county treasurer under protest. The action is brought against the county. The declaration alleges, in substance, that the taxes were levied upon the plaintiff's land, which was returned for non-payment; that the plaintiff thereafter found an opportunity to sell the land, but as the certificate of the county treasurer, required by section 135 of the tax law of 1893, could not be obtained without paying these taxes, he paid them to the treasurer under protest; that he was obliged to do this, or lose his opportunity to sell, as the purchaser could not have his deed recorded without such certificate. He claims that this was duress, and that he is entitled to recover the amount paid from the county, the taxes being void. The money counts are made a part of the declaration, but the bill of particulars limits the claim to the cause mentioned above.

The plaintiff supports his contention upon two grounds:

1. That the statute (section 58, Act No. 206, Laws of 1893) authorizes the recovery sought.

2. That the declaration states a good cause of action at common law.

Counsel cite us to How. Stat. p. 1277, for the first law passed in this State permitting the recovery of invalid taxes which have been paid under protest. It was passed in 1882, and, being held not to apply to taxes upon personal property (see *Lyon v. Receiver of Taxes*, 52 Mich. 271), was amended by section 41 of the tax law of 1889 to cover such taxes. At the last session of the Legislature the tax law was changed. Section 53, Act No. 206, Laws of 1893, is a substantial re-enactment of the statutes above cited. It reads as follows:

102 MICH.—34.

"Any one may pay the taxes, or any one of the several taxes, or any part thereof, on any parcel of land, and the treasurer shall note across the face of the receipt, in ink, any portion of the taxes remaining unpaid. He may pay any tax, whether levied on personal or real property, under protest to the treasurer, specifying at the time in writing, signed by him, the grounds of such protest, and such treasurer shall minute the fact of such protest on the tax roll and in the receipt given. The person paying under such protest may, within 30 days, and not afterwards, sue the township for the amount paid, and recover, if the tax is shown to be illegal for the reason specified in such protest. Any person owning an undivided share, or other part or parcel, of real property assessed in one description, may pay on the part thus owned by paying an amount having the same relation to the whole tax as the part on which payment is made has to the whole parcel. The person making such payment shall accurately describe the part or share on which he makes payment, and the receipt given, and the record of the receiving officer, shall show such description, and by whom paid; and, in case of the sale of the remaining part or share for non-payment of taxes, he may purchase the same in like manner as any disinterested person could. Any person having a lien on property may, after 30 days from the time the tax is payable, pay the taxes thereon, and the same may be added to his lien, and recovered, with the rate of interest borne by the lien. A tenant of real estate may pay the taxes thereon, and deduct the same from his rent, unless there be an agreement to the contrary. Such payment may be made to the township treasurer while the tax roll is in his hands, or afterwards to the county treasurer. The receipt given shall be evidence of such payment."

The section permits payment to the township treasurer under protest, and the commencement of suit against the township, within 30 days thereafter, to recover the money paid.

Section 58 of the same act is as follows, viz.:

"After the return of lands for unpaid taxes, the county treasurer is authorized to receive, under like provisions as in section 53 of this act, the amounts of the several taxes or any of them due."

It is argued that, while this language does not expressly authorize payment of the tax under protest, or recovery from the county of money so paid, these rights are included, under the language used.

The language authorizes the payment and receipt of the various taxes, or any of them, due, "under like provisions as in section 53." What are the provisions of section 53 under which they may be paid? The first sentence of that section allows the payment of any one of several taxes or any part thereof, on any parcel of land, and requires the treasurer to note across the face of the receipt given, in ink, any portion of the taxes remaining unpaid. It is to this sentence alone that this provision of section 58 applies. It is true that section 53 contains a number of other provisions, viz., payment upon undivided interests or a portion of a description, payment by persons holding liens upon the land, or by tenants. But it is not necessary to look to section 58 for authority for making such payments to the county treasurer. Several of them are covered by the last two sentences of section 53 itself, and all of them by section 59. A literal construction of section 58, in accordance with the plaintiff's claim, would require the action to be commenced against the township, although the money was paid to the county treasurer. To sustain plaintiff's contention, we must infer that the Legislature intended to authorize such action against the county. We think this improbable. The Legislature authorized payment under protest within the limited time that the roll should be in the hands of the township officers. It restricted the time within which an action could be commenced to recover the same. This is inconsistent with the theory that it was intended that such course could be taken later, when it would be productive of more inconvenience. The second count of said declaration, alleging the bare fact of payment of illegal taxes,

under protest, to the county treasurer, does not state a cause of action.

The first count is more specific, alleging not only the illegality of the tax, and its payment under protest, but the further fact that it was paid to enable the plaintiff to sell his land, which otherwise he would have been prevented from doing, by reason of his inability to procure the treasurer's certificate, which section 135 of Act No. 206 of the Laws of 1893 requires to entitle a deed to record. It is contended that this was such duress as to make such payment involuntary, and to authorize an action against the county, under the principles of the common law. Were this conceded, the count is faulty, in that it does not state that the defendant has received the tax, or any portion of it, to its use. Cooley, Tax'n (2d ed.), 805.

It is, however, contended that a common-law right of action exists, because the plaintiff could not sell his land without paying this tax, as the prospective purchaser could not record the deed without paying the tax, and would not purchase without payment, so that his deed might be recorded. The payment of money to prevent the threatened seizure and sale of goods by an officer in possession of a legal warrant is a payment under duress, and may be recovered. It is upon the principle that such warrant "is in the nature of an execution running against the person and property of the party, upon which he has no day in court, no opportunity to plead and offer proof, and have a judicial decision of the question of his liability." "Where there is compulsion, actual, present, potential, in inducing that payment, by force of process available for instant seizure of person or property, and the demand is really illegal," payment and recovery back are permitted. The element of coercion is essential to the right, and payment must be made to prevent seiz-

ure or arrest. *Peebles v. Pittsburgh*, 101 Penn. St. 304; Dill. Mun. Corp. § 940; *Taylor v. Board of Health*, 31 Penn. St. 73; *Commissioners v. Walker*, 8 Kan. 431; *Railroad Co. v. Commissioners*, 98 U. S. 541; *Lamborn v. Commissioners*, 97 Id. 181; *City of Detroit v. Martin*, 34 Mich. 170; *Baker v. City of Big Rapids*, 65 Id. 76; *Betts v. Village of Reading*, 93 Id. 77; *Canfield Salt & Lumber Co. v. Township of Manistee*, 100 Id. 466. Whether this rule should extend to cases of payment to relieve land from a lien for taxes need not be discussed, as that question is not involved. The action is not based upon the claim that the land is in danger of sale, but that, owing to the levy of the tax upon it and the requirement of the certificate, the plaintiff cannot sell the land.

We are aware that in a case resembling this (*State v. Nelson*, 41 Minn. 25), upon *mandamus* brought by the purchaser to compel the treasurer to receive the valid portion of a tax and issue the certificate, the supreme court of Minnesota held that the proper remedy was for the owner to pay the tax, and bring an action to recover it. But we are unable to agree with that decision. We consider it an extension of the rule, which we understand to limit payment to cases of threatened divestiture of property, under circumstances which would deny a judicial hearing before such divestiture, as in case of a sale of goods, or (in those states where it is held to apply to real estate) to cases where title to land is to be put in jeopardy by a sale for taxes. It does not include cases where payment is made from speculative motives, as to enable the owner to make an advantageous sale. If it did, it might as well be held to apply to a case where a purchaser would be lost by reason of the existence of the tax as to one where the deed could not be recorded for want of a certificate. In fact, it would be equally applicable to any case where the outstanding tax is an impediment to any

disposition that the owner might desire to make of the property. We do not deny that it might prove an embarrassment, but it does not follow that the public should be subjected to an action, for it does not fall within the reasons upon which the right depends. Instead of being a payment under duress of property, the seizure of which is threatened, it is at most a payment under duress of prospective profits.

But this is not as meritorious a case as the Minnesota case, where the *owner* was not permitted to record her deed. In that case it was said:

"Nor is it necessary, in order to constitute compulsory, as distinguished from a voluntary, payment, that the unlawful demand be made by an *officer* who is prepared to enforce it by process. There may be that kind and degree of necessity or coercion which justifies and virtually requires payment to be made of the illegal demands of a private person, who has it in his power to seriously prejudice the property rights of another, and to impose upon the latter the risk of suffering great loss if the demand be not complied with.    *    *    *    Obviously, the question of necessity must be considered and determined under the circumstances affecting each particular case. The reasons of necessity upon which the law, in this particular, must be deemed to be founded, are applicable in full force in this case, and would have justified the payment of the tax in question, and a subsequent recovery of it if illegal. The officer, of course, could not certify that the taxes were paid while this tax stood undischarged and its validity undetermined. The register of deeds was prohibited by law from recording the deed until the fact of payment should be thus certified to him. The relator could not secure the recording of the deed by which she had acquired title to this land. If not recorded, she was liable, by force of our registry law, to be wholly divested of her title," etc.

"The inducements which the law thus imposes upon a grantee of lands to pay a tax of inconsiderable amount, rather than to suffer his title to valuable lands to be thus jeopardized, may well be deemed to amount to compulsion. The coercion is certainly as real, and of substantially the same nature, as in the case of a distress of goods."

If it be conceded that "coercion" is a proper term to use in connection with that case, it is a negative coercion, while the case of the threatened seizure of goods is active. One is an inconvenience resulting from the application of a general rule of law to the circumstances in which the party places himself; the other, an unwarranted attempt to enforce an invalid claim by depriving him of specific property under color of process in its nature judicial. The relator was at liberty to pay or not. If not, she was denied the privilege of recording her deed. The right to record the deed was no inalienable right. It originated in the liberality of the public. It was a privilege that she held in common with others. Unquestionably, the legislature might abolish the recording of deeds altogether, unless it was a constitutional right, and in that case the electors could do so. If this is so, can it be said that it was not within their power to make the right conditional, or to limit it to lands upon which the taxes should be paid? And, if it be, is it done at the expense of making the public liable for damages resulting from the inability of persons who are not entitled to the benefit of the act, because not able to comply with its conditions, or, what is substantially equivalent thereto, through payment and suit, to recover the money? Why should it be assumed that the object of the law was to induce people to pay invalid taxes? Is it not quite as reasonable that the public policy, which makes the record of deeds desirable for the preservation of evidence of title, should also have a care for the prospective purchaser, and offer him some protection by an assurance that the taxes were paid up to the date of the record of the last deed? Several states have similar requirements, but we have never supposed that they gave to persons the right to pay the taxes, and get the benefit of the registry, and then bring an action for the money paid, under the pretense that it was paid under duress, thereby

removing clouds and quieting titles in courts of law. We very much doubt the policy of the law which would subject townships, counties, and cities to actions under such circumstances. It is doubtless right that persons who pay money to avoid seizure of their chattels should be permitted to recover the same by action where such seizure would be a wrong, but we doubt the propriety of so extending the rule as to permit citizens to speculate upon such right. In the Minnesota case the county was subjected to an expensive suit to recover $6.25, so that the plaintiff might record her deed. But the reasons given for the decision in that case do not exist here. There the owner was deprived of the benefit resulting from recording her deed; here the plaintiff's deed is recorded, and he has all the security that the record can afford. As already stated, his only complaint is that his purchaser is to be deprived of the right to record his deed without paying an invalid tax, which operates to lessen the price obtainable for his land. We think such a case is not within the rule.

The money counts, however, are valid; and the fact that a bill of particulars limits the claim, to which it might restrict the proof, cannot be permitted to affect the declaration upon demurrer. The bill of particulars is no part of the pleading, and might be amended before or at the trial. *Cicotte v. Wayne Co..*, 44 Mich. 173, 59 Id. 512. The abstract right to bring a suit by declaration upon the common counts against a county is settled by former adjudications. *Endriss v. Chippewa Co.*, 43 Mich. 317; *Cicotte v. Wayne Co.*, 44 Id. 173, 59 Id. 512. The demurrer is to the whole declaration, and, inasmuch as the money counts are good, it cannot be sustained. 1 Shinn, Pl. & Pr. § 683; Chitty, Pl. 664, and cases cited.

The judgment of the circuit court must be reversed,

and an order entered overruling the demurrer, and remanding the cause for further proceedings.

The other Justices concurred.