THOMPSON *v.* CITY OF DETROIT.

1. TAXES—STREET IMPROVEMENTS—CHARTER PROVISIONS—INVALID TAX.

Chapter 11, § 37, of the Detroit charter provided that, in cases of street improvements, the board of assessors should, after correction of the assessment roll, "sign the same, and report it to the common council," and that the council might then confirm the same. *Held*, that the council had no authority to confirm an unsigned roll.

2. SAME—LIEN PRIMA FACIE VALID—INVOLUNTARY PAYMENT.

The charter further provided that, after confirmation, such assessment should constitute a lien upon the real estate until paid, and should be collected as authorized by law. Plaintiff paid under protest, and after demand, a tax for a street improvement which was invalid because of the assessors' failure to sign the assessment roll before its confirmation by the common council. *Held*, that the payment, being necessary to relieve the property from a *prima facie* valid lien, could be recovered back as involuntary, although no proceedings for a sale of the land had been instituted.

3. SAME—STATUTORY PROTEST.

Section 53 of the tax law of 1893 (Act No. 206), authorizing the payment of taxes under protest, does not apply to assessments for local improvements, but relates to general taxes only.

Error to Wayne; Hosmer, J.    Submitted June 17, 1897.    Decided October 1, 1897.

*Assumpsit* by William G. Thompson and another, trustees of the estate of Edmund A. Brush, deceased, against the city of Detroit, to recover taxes paid under protest.    From a judgment for plaintiffs, defendant brings error.    Affirmed.

*Arthur Webster*, for appellant.

*Henry M. Duffield* and *Divie B. Duffield*, for appellees.

LONG, C. J. Plaintiffs are the trustees of the Edmund A. Brush estate, and bring this action to recover from the defendant the amount of $1,199.55 paid for taxes under protest. The tax or assessment was upon certain real estate of the Brush estate, for the opening and widening of Randolph street, in the city of Detroit. Plaintiffs recovered in the court below.

There are but two questions involved:

1. The validity of the tax.
2. Whether the payment was voluntary.

There is no dispute of fact. It appears that, at the time the assessment roll was prepared, Theodore Rentz, Fred E. Farnsworth, and William T. Dust were assessors, and caused the roll to be prepared. On July 22, 1892, the roll, without the signatures of the assessors, or any of them, and without any certificate whatever, was transmitted to the common council for confirmation, and on July 26th an order of confirmation was entered on the records of the council. On the same day a certificate was added to the roll, and signed by the assessors. It was held by the court below that the council acted without authority in confirming the roll before a certificate of the assessors was attached; that the certificate subsequently made by the assessors on July 26th was insufficient, because it did not recite the different steps taken by the assessors in making the assessment. This certificate is as follows: "We hereby approve this roll, and certify to its correctness." This was the only certificate ever attached to the roll; the only writing accompanying the roll as it was transmitted to the council being a letter from Theodore Rentz, president of the board of assessors.

The charter of the city of Detroit provides for the appointment by the common council of a board of assessors, consisting of three persons. In cases of street improvements, the board is to make out a list of lots or parcels of real estate constituting a local assessment district, with names of the owners, and the length of the lot fronting directly on the improvement, and assess the cost and expenses of the work

chargeable upon the property, etc. When the assessment roll is completed, the board is to give notice, by at least five publications in the city paper, that such roll is completed, and will remain in its office 12 days from the first publication of such notice, for the inspection of all concerned. It is further provided that:

"At the expiration of said 12 days, said board shall, after any needful revision and correction of such roll, sign the same, and report it to the common council. Said council may then confirm the same, or may, when it shall deem necessary, refer the same back to said board for further revision or corrections. And when the same shall be corrected to the satisfaction of said council, it shall by resolution confirm the same. After such confirmation, such assessment shall constitute a lien until paid upon said lots or parcels of real estate, and shall be collected in such manner as may be authorized by law." Chapter 11, § 37, Charter of 1893.

Whether or not the board of assessors made the proper roll does not appear from the record before us. It does appear that the roll had not been signed as provided by the charter at the time it was placed in the hands of the common council. This was a necessary prerequisite to a proper and legal assessment roll. The council had no method of judging what had been done by the assessors, except by this certificate. That body was to examine the roll made and signed by the assessors, and, if found correct, approve it; and, when so approved, the taxes were to become a lien. This roll, therefore, had no effect as an assessment roll, and the court below was correct in so holding. *Warren* v. *City of Grand Haven*, 30 Mich. 24.

Under the charter of the city, the assessment for such street openings becomes a lien upon the land after the expiration of 30 days from the time of the confirmation of the roll by the common council, or at least it becomes a lien when the roll is placed in the hands of the receiver of taxes. The contention of counsel for the plaintiffs is that this assessment having become a lien at the time it was paid, the payment cannot be said to be voluntary. The

court was of this opinion, and found in favor of plaintiffs. The claim of counsel for defendant is that the coercion or duress which will render a payment of taxes involuntary must, in general, consist of some actual or threatened exercise of power possessed or believed to be possessed by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of immediate relief, except by making payment, and that no such fact exists in the present case.

Judge COOLEY, in his work on Taxation (page 805), lays down the rule as follows:

"(1) The tax must have been illegal and void, and not merely irregular; (2) it must have been paid under compulsion, or the legal equivalent; (3) it must have been paid over by the collecting officer, and have been received to the use of the municipality."

Judge COOLEY adds:

"Where the statute gives an action, it may not be necessary that all these conditions should concur, since the statute may dispense with one or more of them."

Section 53, Act No. 206, Pub. Acts 1893, provides, as to the payment of general taxes under protest, that:

"He may pay any tax, whether levied on personal or real property, under protest to the treasurer, specifying at the time in writing, signed by him, the grounds of such protest, and such treasurer shall minute the fact of such protest on the tax roll and in the receipt given. The person paying under such protest may within 30 days, and not afterwards, sue the township for the amount paid, and recover, if the tax is shown to be illegal for the reason specified in such protest."

But that act has reference to the assessment and collection of the general taxes, and not to special assessments, as in the present case. In fact, the protest does not recite the grounds upon which is based the claim that the tax is illegal; so that the question must be determined upon general principles, instead of any reliance upon the statute.

The plaintiffs put in evidence the files in the case of

*Ling* v. *City of Detroit*, from which it appeared that Ling, who had been assessed for the same improvement, had filed a bill in the Wayne circuit court, in chancery, and a decree had been made in the case holding the assessment wholly void. That decree has never been appealed from, so far as shown by this record. It also appears in the present case that the assessment is void. The city, therefore, has in its possession the moneys paid by plaintiffs, which should be repaid, unless by the strict rules of law no recovery can be permitted.

Can one relieve his land from the lien of a tax or assessment against it by making payment before any attempt to make sale? It appears that on August 9, 1892, a notice was sent by the receiver of taxes to the plaintiffs, stating that the assessment had been made upon the property, and, if not paid on or before September 9th, 5 per cent. would be added, and thereafter such tax would bear 10 per cent. per annum until paid. The assessment was paid September 9th. While the tax was not paid under threat of levy upon personal property, yet we think that, it having been made for the purpose of relieving the real estate of the lien which had attached by virtue of the provisions of the charter, it was equivalent to a payment under compulsion. *Prima facie*, it was a valid lien upon the land. Counsel for defendant cites the case of *Union Ins. Co.* v. *City of Allegheny*, 101 Pa. St. 250, holding that, even after the land has been advertised for sale, the payment of the tax must be held to be voluntary, because the plaintiff has a remedy by injunction to prevent the sale. This is not the rule in this State. It was held in *Nickodemus* v. *City of East Saginaw*, 25 Mich. 458, that the authorities do not compel the remedy by injunction. In *Atwell* v. *Zeluff*, 26 Mich. 118, the action was brought against Zeluff, who was supervisor, the cause of action being the issue by Zeluff of a tax warrant for the collection of ditch taxes against the plaintiff. There was nothing in the record showing that any levy was threatened, but a demand of payment was made. It was said:

"In regard to the payment made without levy on his goods, it was objected that the payment, being without protest, was voluntary. This question was somewhat discussed, but not actually decided, in *First Nat. Bank* v. *Watkins*, 21 Mich. 483. Where an officer demands a sum of money under a warrant directing him to enforce it, the party of whom he demands it may fairly assume that, if he seeks to act under the process at all, he will make it effectual. The demand itself is equivalent to a service of the writ on the person. Any payment is to be regarded as involuntary which is made under a claim involving the use of force as an alternative, as the party of whom it is demanded cannot be compelled or expected to await actual force, and cannot be held to expect that an officer will desist after once making demand."

In the present case a demand was not only made for the payment, but the plaintiffs, in making payment, did so under protest. By this protest the receiver of taxes must have understood that the taxes were regarded as illegal, and that suit would be instituted to compel the refunding of them. In *Whitney* v. *City of Port Huron,* 88 Mich. 270 (26 Am. St. Rep. 291), it appeared that a special assessment had been laid upon plaintiff's real property, and the city treasurer had advertised it for sale. It was said:

"She had the right to presume that he would proceed with the sale. The fact that the sale would have conveyed no title to the purchaser, on account of the illegality of the tax, or that she could have removed the cloud upon her title caused by such sale by legal proceedings, had no bearing upon her right to pay the tax under protest, and thereby stop the sale. Nor was it any the less an involuntary payment, under the law. * * * If the citizen's property is threatened with seizure under a tax warrant, or his real estate is advertised for sale to collect delinquent taxes, he is, equally in both cases, entitled to free his property by a payment of the tax under protest, and such payment will not be considered voluntary."

In the present case the land had not been advertised for sale, but under the charter the city had the right to make the sale for the collection of the assessment, and presum-

ably would have done so, had the tax not been paid. As was held in *First Nat. Bank* v. *Watkins, supra,* and *Atwell* v. *Zeluff, supra,* the party making payment may assume that .he officer will execute the process on which he makes the demand. The case of *Whitney* v. *City of Port Huron, supra,* was rightly decided; and I can see no good reason for holding that the plaintiffs cannot recover in this case, under the rule there stated. There was a cloud upon the title to the land, demand had been made for the payment of the tax, and the presumption is that the land would be advertised and sold if the tax was not paid. Plaintiffs paid under. protest. They were not bound to wait until actual advertisement and sale before payment. There is a *dictum* in *City of Detroit* v. *Martin,* 34 Mich. 170 (22 Am. Rep. 512), to the effect that, where the sale of the real estate assessed would not constitute a cloud upon the title, payment made to relieve it of the tax would be voluntary. But that question was not there involved. In the case of *Weston* v. *Luce Co.,* 102 Mich. 533, the subject was again referred to. It was said, "Whether this rule should extend to cases of payment to relieve land from a lien for taxes need not be discussed, as that question is not involved."

The present case cannot be distinguished in principle from *Whitney* v. *City of Port Huron, supra.* We think the court below was not in error in holding that the plaintiffs should recover. That judgment will be affirmed.

The other Justices concurred.