THE MICHIGAN TELEPHONE TAX CASES.

(Circuit Court, W. D. Michigan. February 7, 1911.)

**1. TAXATION (§ 608*)—INVALID TAX—REMEDY AT LAW—INJUNCTION.**

Where an alleged invalid tax on telephone companies constituted a lien on their real estate and a cloud on their title, and the taxes alleged to have been illegally assessed, for which under the state law the collector would be personally liable in case the sum was paid, though he had remitted the collections to the state treasury, amounted in a single year to $202,000, complainant's remedy at law by paying the tax under protest and suing to recover the sum was not so adequate and complete as to preclude a resort to equity.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1230–1241; Dec. Dig. § 608.*

Restraining collection of taxes because of excessive or unequal assessments or valuations, see note to Atchison, T. & S. F. Ry. Co. v. Sullivan, 97 C. C. A. 16.]

**2. TAXATION (§ 40*)—STATUTES—DISCRIMINATION.**

It is no answer to an objection that a statute imposing a tax on telephone companies (Pub. Acts Mich. 1909, No. 49) is discriminatory that complainants suffer no harm by the alleged discrimination because all the proceeds of the tax are required to be paid specifically into the primary school fund, so that complainants' tax would be no less if the total of the property taxed was greater, and there was no discrimination.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 68–89; Dec. Dig. § 40.*]

**3. TAXATION (§ 40*)—STATUTES—VALIDITY.**

A state statute imposing a tax on telephone companies cannot be held unconstitutional, unless there appears so clearly and palpably an illegal encroachment on private rights as to leave no doubt that the attempted taxation, by its necessary operation, is really spoliation under the guise

---

**of** exercising the power to tax; the court being required to solve all doubts in favor of the validity of the legislation.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 40.*]

**4.** CONSTITUTIONAL LAW (§ 211*)—CLASSIFICATION—REASONABLENESS.

Classification of subjects in a statute is not arbitrary and invalid if based on some difference which bears a reasonable and just relation to the attempted classification.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 211.*]

**5.** TAXATION (§ 40*)—TELEPHONE COMPANIES—STATUTES—DISCRIMINATION.

Pub. Acts Mich. 1909, No. 49, taxing the property of telephone and telegraph companies on an ad valorem basis, was not unconstitutional as discriminatory because such companies whose gross receipts within the state for the year ending June 30th did not exceed $500 were exempted, such companies forming a legitimate subject for classification, nor would such attempted classification fail because the declared basis of division would in some instances leave corporations on the wrong side of a line drawn on a theory other than by classification based on earnings.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 68-89; Dec. Dig. § 40.*]

**6.** STATUTES (§ 121*)—AMENDATORY ACT—TITLE.

Pub. Acts Mich. 1901, No. 173, was entitled "An act to provide for the assessment of the property of railroad and express companies," and Pub. Acts 1909, No. 49, was entitled "An act to amend the title and certain sections of Act No. 173 of 1901, relating to the taxation of railroad and express companies." *Held*, that the fact that the purpose of the act of 1909 was to include telephone and telegraph companies with railroad and express companies, and that such purpose was effected by its provisions though not in words expressed in the title, did not render the act in violation of the provision of the Michigan Constitution, declaring that an act shall embrace but one subject, which shall be expressed in its title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 146, 173, 174; Dec. Dig. § 121.*]

In Equity.   Suit by certain Michigan telephone companies to restrain the enforcement of Pub. Acts 1909, No. 49, providing for taxation of telephone companies on an ad valorem basis.   Bills dismissed.

Prior to 1901, Michigan railroad, telegraph, and telephone companies were taxed specifically upon their earnings. These taxes were assessed and collected under various acts. That concerning telephone and telegraph companies was Act No. 179 of 1899. It prescribed a tax of 3 per cent. of the gross receipts. In 1901, following political agitation on the subject, the Legislature provided a plan for transferring railroads from the specific to the ad valorem basis. It created a state board of assessors, which was to assess the railroads' property at its true cash value, ascertain the average rate of taxes throughout the state, and then levy this average rate against the amount of the assessment. The validity of this legislation was upheld in this court by Judge Wanty (Michigan Railroad Tax Cases, 138 Fed. 223), and his decree was upheld by the Supreme Court (201 U. S. 245, 26 Sup. Ct. 459, 50 L. Ed. 744). Thereafter, and by Act No. 49 of 1909, telephone and telegraph companies were also transferred to the ad valorem basis, and put in the same class with railroad companies, subject to assessment by the state board of assessors. The act (section 4) provided for the assessment "of the property by whomsoever owned, operated or conducted * * * of * * * telegraph companies, telephone companies," etc., but carried the following proviso: "Provided, that the property of telegraph and telephone companies whose gross receipts within this state for the year ending June 30th do not exceed five hundred dollars, shall be exempt from taxation." Pursuant to this act, the state board assessed the property of the four complainant com-

panies at the aggregate sum of about $14,500,000, and levied thereon a total tax of about $300,000. The tax under the former 3 per cent. specific basis would have been about $130,000, so that the new law effected a $170,000 increase. They filed their several bills against the Auditor General to prevent the enforcement of the new tax. A preliminary injunction was granted 'and continued, on condition that the companies pay the tax accruing under the old law so that only the excess would be affected by the injunction. With this condition they have complied. The bills allege that the proviso of section 4 causes discrimination and taking of property in violation of the "due process" and "equal protection" clauses of the fourteenth amendment to the federal Constitution, and further allege that the act is invalid for deficiency of title under the Michigan Constitution. Article 5, § 21. Upon the argument of a demurrer, it was thought that some of the general terms of the bill in its allegations of lack of cause for discrimination might be sufficient to admit evidence operating to define these general terms, and the demurrer was overruled. Full proofs have now been taken and the following facts, which may bear upon the existence of forbidden discrimination, are established:

For the year ending June 30, 1909, 659 corporations, individuals, or associations made the required report. Of these, 224 showed receipts of more than $500 each, reported property said to have cost $35,000,000 and reported gross receipts of $7,600,000. The board assessed this property at $21,000,000, and levied thereon a total tax of $433,000, in place of the former specific tax, which would have been $228,000. Four hundred and thirty-five of the reports showed receipts of less than $500 each. Property belonging to the persons and companies so reporting was not assessed. The cost of this nonassessed property, at the average reported cost per telephone of all reporting companies, would be about $145,000. Complainants' proof tends to show such cost to be about $250,000. Two hundred thousand dollars may fairly be assumed as such cost; and upon the comparative basis used with the larger corporations this exempted property would have been assessed at $120,000. If we add an ample allowance for nonreporting, nontaxable property, it still appears that the property which escaped taxation and which forms the basis of the complaint is not more than 1 per cent. of the total. The great part of all the taxed property belonged to commercial corporations or enterprises organized and conducted for the purpose of earning and paying profits as or in the nature of dividends. Substantially all that untaxed was the property of co-operative or farmers' mutual associations, usually unincorporated, conducted at estimated cost, and organized primarily to get for the associates cheap telephone service.

In the composition of the first or taxed class, there are exceptions to the description just stated, and there are to be found some conducted at cost enterprises. The proof does not show how many. If the extent of such enterprises is important in order to establish discriminations, then complainants' proof fails in this respect. It is, however, a safe assumption, from inspection of the list, that more than 98 per cent. of the property assessed represents commercial investments adapted and intended to earn interest or dividends. In the composition of the second or exempt class, there are also exceptions to the stated formula. Out of the 435 there are 58 as to the character of which complainants raise this question. As to many of the 58 there is a lack of any substantial proof. As to some, classification on this basis is difficult, because they include elements characteristic of each class; but, excluding those which were new in 1909 and will be taxed in 1910, a conclusion that the property of the commercial investment class, which would escape taxation because of its small income, cost $75,000, resulting in an assessment valuation of $45,000, gives complainant the benefit of every doubt. This is less than one-fourth of 1 per cent. of the assessment. These figures, compiled from the reports for the year ending June 30, 1909, are subject to variations on account of property then not reported and so omitted, and also on account of property later devoted to such uses. Developments in the regular course of business and the research of parties brought to light before the evidence closed about 90 additional enterprises which had not reported. These do not materially vary the proportions given, and it is clear that the unobserved and undiscovered telephone systems must be almost wholly of the small, roadway

class. There is no reason to suppose that the future, regular development of the business will change the existing proportions.

There has been, for some years, a continuing absorption by the larger companies of the small ones, and it is a frequent occurrence for a co-operative, nonprofitmaking company, having gross annual earnings of less than $500, to sell its property to one of the larger companies having a large income. It follows as an undoubted fact that the identical property devoted continuously to substantially similar use may from year to year shift between taxable and nontaxable class solely on account of the ownership of the property.

Henry M. Campbell, Jacob Kleinhans, and Leo M. Butzel, for complainants.

Franz Kuhn, Atty. Gen., George S. Law, Asst. Atty. Gen., and Roger I. Wykes, Special Counsel, for defendant the Auditor General.

DENISON, District Judge (after stating the facts as above). In the view I have taken of the controlling questions, it is not important to state in greater detail the questions of fact or of law that are presented by the record, or to make a more complete finding of facts.

The defendant insists that complainants have an adequate remedy at law. I think not. They own real estate. This tax constitutes a lien upon their real estate and a cloud thereon, and so they have a prima facie right to resort to a court of equity for the removal of the cloud. Even so, if they have another completely adequate remedy, by paying the tax under protest, and suing at law for its recovery, such prima facie jurisdiction might be destroyed. Although the state cannot, without statutory permission, be sued to recover a void tax, yet it is the settled rule of Michigan that the collecting officer is personally liable for such tax, even though he has paid it into the state treasury. Bank v. Watkins, 21 Mich. 488; Thompson v. Detroit, 114 Mich. 502, 72 N. W. 320. To make such remedy "adequate" in this case, it must be assumed that judgments aggregating for one year $202,000 (and a much larger sum to accrue pending a final decision) could be collected from the individual who may be now filling some state office. I cannot indulge such an assumption for the sake of defeating jurisdiction; but complainants may, if they wish, amend by alleging defendant's pecuniary irresponsibility for the amounts involved.

Defendant also insists that complainants suffer no harm from the alleged discriminations, and so have no equity to complain. This objection is taken because all the proceeds of this tax go specifically to the primary school fund, and do not operate, directly or indirectly, to reduce the tax burden of telephone companies; in other words, complainants' tax would not be a dollar less, if the total of property taxed in this class was twice as much as it is. The point is based upon the further ground that a complaint of this character should not receive consideration, unless it is made by some company which finds itself in the taxed class, when, upon the only sustainable basis of classification, it should be in the untaxed class. There is plausibility in this argument, but it seems to lead to the conclusion that complainants must submit to any discrimination, no matter how arbitrary or how unjustifiable, if the discrimination does not increase their tax. The forbidden discrimination may be found as well in a

bestowal of unfair favor as in the imposition of an unjust burden. "Such equal protection is denied when, upon one of two parties engaged in the same kind of business and under the same conditions, burdens are cast which are not cast upon the other." Cotting v. Kansas City Stockyards, 183 U. S. 79, 112, 22 Sup. Ct. 30, 43, 46 L. Ed. 92.

In deciding whether state legislation transgresses constitutional limitations, it is to be remembered that an affirmative decision can be predicated only upon a case "so clearly and palpably a legal encroachment upon private rights as to leave no doubt that such taxation, by its necessary operation, is really spoliation under the guise of exercising the power to tax," and that "all doubt as to the validity of legislative enactments must be solved, if possible, in favor of the binding force of such enactments." Henderson Bridge Co. v. Henderson City, 173 U. S. 592, 615, 19 Sup. Ct. 553, 562, 43 L. Ed. 823. It must also be remembered that all arguments against the law because of its alleged unfairness and injustice were for the Legislature; and no such argument can now be considered by this court, unless the injustice is so extreme as to impair a constitutional right.

It would not be profitable to review the Supreme Court decisions on the subject of classification. Reference to this line of decisions will be found in the four most recent opinions, one in 216 U. S. (Southern Ry. v. Greene, 216 U. S. 400, 417, 30 Sup. Ct. 287, 54 L. Ed. 536), and three in 217 U. S. (Southwestern Oil Co. v. Texas, 217 U. S. 114, 122, 30 Sup. Ct. 496, 54 L. Ed. 688; Standard Oil Co. v. Tennessee, 217 U. S. 413, 420, 30 Sup. Ct. 543, 54 L. Ed. 817; and Brown-Forman Co. v. Kentucky, 217 U. S. 563, 572, 30 Sup. Ct. 578, 54 L. Ed. 883). The clear rule is that classification is not arbitrary and invalid if it is "based upon some difference which bears a reasonable and just relation to the attempted classification." Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 560, 22 Sup. Ct. 431, 440, 46 L. Ed. 679. Nor is it necessary to inquire whether, as defendant argues, the right is broader in matters of taxation than in matters of police power. It is at least as broad, and complainants cannot object if we accept the criteria established in the police power cases. Indeed, the underlying question seems to be the same. Brown-Forman Co. v. Kentucky, supra, at page 571 of 217 U. S., at page 578 of 30 Sup. Ct., 54 L. Ed. 883. Nor need we consider whether the small companies are wholly exempt from all taxation or remain subject to specific taxes under the old law. When they are hereafter spoken of as exempt, it is intended to say that they are exempt at least under this act. So, too, I think that a determination whether, when taxes are levied upon an ad valorem and not upon a specific basis, the amount of annual earnings, gross or net, may, of itself, constitute a sufficient basis for rendering property taxable or nontaxable, is not necessary in a case where other distinctions exist which are more satisfactory than the mere amount of earnings.

Is there, then, in this case, any difference, beyond the respective earnings, between the property taxed and the property untaxed, which difference bears any reasonable relation to the classifying acts of the assessing board? Disregarding for the moment the exceptional in-

stances, we find (1) that the property exempted is only a trifling portion of the whole; (2) that the cost of assessing and collecting in this class would be disproportionate to the amount which would be realized; (3) that this property is in the incipient or development stage, while the taxed property is in the fully developed form; (4) that the use of the untaxed property is predominantly private, while the use of the taxed property is correspondingly public; and (5) that the exempted property is used for the personal convenience and economy of the owners, while the taxed property represents commercial investments for profit-making purposes. It seems to me clear that these distinctions, and especially the last named, fully justify a classification resting on that basis, and justify taxing the public use profit-earning property, while exempting the private use, co-operative property. King v. Mullins, 171 U. S. 404, 435, 18 Sup. Ct. 925, 43 L. Ed. 214; Magoun v. Illinois Bank, 170 U. S. 283, 293, 18 Sup. Ct. 594, 42 L. Ed. 1037; St. Louis, etc., Co. v. Illinois, 185 U. S. 203, 207, 22 Sup. Ct. 616, 46 L. Ed. 872; Seaboard Air Line Ry. v. Seegers, 207 U. S. 73, 76, 28 Sup. Ct. 28, 52 L. Ed. 108.

Having so concluded that the Legislature was entitled to reach and accomplish the result which it did accomplish in the matter of taxation exemption, the next question must be whether the result will be invalidated because the Legislature may have assigned the wrong theory; that is to say, if the Legislature is entitled, for any good reason, to exempt from general taxation a class of items, and such exemption results from the due administration of the statute as passed, is the exemption invalid because the Legislature in the statute declares a nonmaintainable reason for the exemption? This question, I am satisfied, should be answered in the negative. "The validity of the tax can in no way be dependent upon the mode which the state may deem fit to adopt in fixing the amount which it will exact." Home Ins. Co. v. N. Y., 134 U. S. 594, 600, 10 Sup. Ct. 593, 595, 33 L. Ed. 1025. "The substance and not the shadow determines the validity of the exercise of the power." Postal Tel. Co. v. Adams, 155 U. S. 688, 698, 15 Sup. Ct. 268, 270, 39 L. Ed. 311. We are, then, necessarily led to the conclusion that this legislation, which might rightfully have created the resulting exemptions upon the ground that they favored private companies or nonprofit-making companies, is not invalid because it describes these companies in terms of earnings, instead of in terms of method and use.

This leaves upon this branch of the case only the question whether the attempted classification must fail because the declared basis of division will leave some instances of each class upon the wrong side of the line drawn under the true basis. It will tax some small portion of the co-operative companies, and will exempt some small portion of the profit-making companies. This question is answered by the Supreme Court in M. J. & K. C. R. v. Turnipseed (Dec. 19, 1910) 219 U. S. 35, 31 Sup. Ct. 136, 55 L. Ed. ——. In that case, it was contended that a classification between employés, which, in a general way, was a proper classification, was so formulated by the statute that it accomplished more than the underlying reasons of classification per-

mitted, and exempted employés for whose exemption there was no lawful reason. Mr. Justice Lurton said:

"But this court has never so construed the limitation imposed by the fourteenth amendment upon the power of a state to legislate with reference to particular employments, as to render ineffectual a general classification resting upon obvious principles of public policy because it may happen that the classification includes persons not subject to a uniform degree of danger."

Upon the same subject the same court had already said:

"In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things." Magoun v. Illinois Bank, 170 U. S. 283, 296, 18 Sup. Ct. 594, 599, 42 L. Ed. 1037.

And also:

"Exceptional and rare cases * * * may be imagined where * * * the people affected by the statute ought in strictness to have been included in the exception. But we do not think the statute should be condemned on that account," etc. Ozan Co. v. Union Bank, 207 U. S. 251, 256, 28 Sup. Ct. 89, 91, 52 L. Ed. 195.

If this classification is to be sustained, for the reasons stated, it becomes necessary to consider the force of certain incidents which undoubtedly do constitute, in some measure, a discrimination not justified by the adopted theory of classification. The first of these is found in the fact that the same property, continuously owned by the same persons, and devoted to the same use, will from year to year shift between the classes, as its earnings vary with reference to the $500 mark. This seems to indicate that taxation depends upon mere size; but this relation between size and taxation is really not determinative, but rather is superficial and incidental. The amount of earnings furnishes a fairly accurate indication, whether the company is beyond the incipient stage of profit making. Mr. Justice Holmes has very recently said (Engel v. O'Malley [Jan. 3, 1911] 219 U. S. 128, 31 Sup. Ct. 190, 55 L. Ed. ——):

"It is true, no doubt, that, where size is not an index, * * * the law cannot discriminate between the great and the small. But in this case size is an index."

The other of these incidents consists in the fact already stated that a mere change of ownership may accomplish a transfer from one class to the other. This result is logically inconsistent with any theoretically permissible classification; and, if it was the only element for consideration, it would demonstrate that the classification was invalid. In this case, however, it seems comparatively negligible and ought not to be permitted to control the situation. The amount of property so shifting from year to year is small and relatively trifling. True, complainants might segregate parts of their property into these small units, and so escape some taxation; but they have not done this, and to do so would, very likely, involve more expense than saving. Legislation is not necessarily invalid just because there is a loophole by which an occasional instance may escape an otherwise universal operation. Upon the whole, this incident must be taken as one of those imperfections likely to be found even in well arranged systems of taxation. As said by Mr. Justice Miller in State Railroad Tax Cases, 92 U. S. 575, 612

(23 L. Ed. 663), and repeated by Mr. Justice Brewer in Travelers' Ins. Co. v. Connecticut, 185 U. S. 364, 372, 22 Sup. Ct. 673, 676, 46 L. Ed. 919:

"Perfect equality and perfect uniformity of taxation, as regards individuals or corporations, or the different classes of property subject to taxation, is a dream unrealized."

It follows from these considerations that the act of 1909 in question does not deny to complainants the equal protection of the laws, nor does it take their property without due process of law.

The nonfederal question presented by the record, and which must also be decided, is based upon the familiar provision of the Michigan Constitution that an act shall embrace but one object, which shall be expressed in its title. Omitting unimportant words, and paraphrasing somewhat, Act No. 282 of 1905 is entitled "An act to provide for the assessment of the property of railroad companies and express companies," and the act now challenged, No. 49 of 1909, was entitled, "An act to amend the title and certain sections of Act No. 282 of 1905, relating to the taxation of railroads and express companies." The purpose of the act of 1909 was to include telephone and telegraph companies with railroad and express companies, and this purpose was not, in so many words, expressed in the title. The Michigan Supreme Court has construed and applied this constitutional provision in a large number of cases. Some of the earlier cases applied the limitation with great strictness, but the later tendency has been to hold that the title is sufficient if it fairly indicates the subject-matter, and ought to put on notice those who may be interested in that subject-matter. The exact question here presented has never been decided in Michigan, although it has been held that in the title of an amending act a mere reference to the number and general purpose of the act amended is sufficient; but this holding has been in cases where the purpose of the amendment was within the original title of the act. Callaghan v. Chipman, 59 Mich. 616, 26 N. W. 806; Atty. Gen. v. Amos, 60 Mich. 375, 27 N. W. 571; People v. Howard, 73 Mich. 14, 40 N. W. 789; Soukup v. Van Dyke, 109 Mich. 681, 67 N. W. 911. The practice employed in this instance has not been uncommon, and counsel have pointed out 30 instances during the last eight sessions where amending statutes have been thus entitled, and where the statute must fail if the present one is invalid. The title of this act gave clear notice that there was to be made in the original act some change which necessitated changing its title, and this was, by necessary implication, notice that it was intended by the amendatory act to reach some kinds of property not named in the title to the original act, or else to withdraw some kind of property which was there named. We have, then, a case where, by the original statute, certain public service corporations were subjected to a given system of taxation, and where public notice was given that it was proposed to change the enumeration of corporations included under that system. I think that telephone and telegraph companies are not entitled to complain of any deficiency in this notice, and that it was sufficient to satisfy the theory of the Constitution. It is a matter of public, political history that the extension of this taxing system, so as to include tele-

phone and telegraph companies, had been the subject of a contest during the legislative session of 1907, at which the attempted extension failed, and that such extension was specially mentioned and urged in the Governor's message to the Legislature of 1909. These well-known facts make it improper to resort to any strained construction in order to find surprise or lack of notice.

Decree may be entered dismissing the bills in the four cases.